IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MELVIN HOLMES,

               Petitioner,

vs.                                   Case No. 14-3074-SAC

REX PRYOR, Warden, Lansing
Correctional Facility, and
DEREK SCHMIDT, Kansas
Attorney General

               Respondents.


**MEMORANDUM AND ORDER**

    Petitioner is serving a sentence in Kansas for the first-degree murder of Glenda Smith and criminal possession of a firearm. Petitioner shot Smith in the chest at close range with Smith's gun in the early morning hours of March 7, 1999. Prior to shooting Smith, petitioner had struck her in the head with a hammer. The main jury issues during the two trials of this case concerned petitioner's intent and premeditation.

    This case is now before the court upon petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The issues in the habeas corpus petition concern the prejudicial impact of comments made by petitioner during his videotaped interview by the police. Many of the comments concerned petitioner's long drug history and there was a brief

reference to prior prison time in addition to other remarks which might cast petitioner in a bad light. It is undisputed that the jury watched a version of the videotape interview that included prejudicial statements. Petitioner contends that the admission of the alleged improperly redacted videotape was contrary to the trial court's in limine order and contrary to his trial counsel's understanding of what had been agreed would be shown to the jury.

## I.  HABEAS STANDARDS

A writ of habeas corpus may not be granted on behalf of a person in custody upon a state court conviction unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence" presented at trial. 28 U.S.C. § 2254(d)(1)&(2). State court factual findings, including credibility findings, are presumed correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of

this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

The court may not issue a writ of habeas corpus "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Even a "strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Id. at 102. The law "stops just 'short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings.'" Frost v. Prior, 749 F.3d 1212, 1223 (10th Cir. 2014)(quoting Richter, 562 U.S. at 102)).

Respondents have raised the issue of exhaustion of state remedies as to some of the questions presented by petitioner. The court has the discretion to deny a claim on the merits even absent exhaustion, 28 U.S.C. § 2254(b)(2); Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009). The court has decided for the purposes of this order to address the merits of all the claims petitioner has raised in this case.

II.  CASE HISTORY

   A. <u>Post-conviction proceedings</u>

   Petitioner was first tried on the charges in this case in 1999. He was convicted, but had the convictions overturned. He was then retried and convicted again.  This action concerns what happened during the retrial.  After he was convicted upon retrial, petitioner appealed and had his sentence overturned, although his convictions were affirmed.  Petitioner was resentenced to a term of life imprisonment with the possibility of parole after 25 years.  Petitioner asked for relief from the sentence pursuant to K.S.A. 60-1507.  The litigation of that motion advanced to the Kansas Supreme Court and back to the district court and the Kansas Court of Appeals before relief was finally denied.

   B. <u>Petitioner's counsel's opening statement</u>

   In petitioner's counsel's opening statement at the start of the second trial, counsel said that petitioner and Smith did drugs all day long during the day before Smith's death.  He referred to petitioner and Smith as "drug addicts" and "dope fiends." Vol. II of trial transcript at pp. 17 and 18.  He mentioned that Smith had left to deliver drugs in the early morning hours before she was killed.  He also mentioned that petitioner "had to sell and give up everything he had in order

4

for Smith to get her drugs, in order for him to get his drugs"
and that petitioner was "tired of it." Id. at p. 17.

C.  Trial evidence

1.  Evidence not subject to redaction

The evidence at the second trial showed that petitioner and
Smith had known each other for years and lived together in
Smith's home for approximately six months prior to Smith's
death.   Petitioner  and  Smith  were  heavy  drug  addicts.
Petitioner had used heroin and cocaine multiple times on the day
before the crime.  Smith had injected cocaine throughout the day
and around midnight that night.   Their drug addiction caused
money issues.  Neither person was working at that time, although
Smith had worked for many years for Learjet and had saved money.
Petitioner  had  lost  his  house  and  many  of  his  possessions.
Smith was upset that petitioner was not bringing in income and
she suspected that he was selling her things.

She nagged him about this.  Petitioner told the police that
he "just snapped." Doc. No. 2-2, p. 61.  When asked to explain
his actions or to describe Smith's nagging, petitioner stated
the following during his videotaped police interview:

> "It's just, I've done pawned and lost everything I
> had, god damn down to sellin' shit and she's been just
> naggin', naggin', naggin', naggin'. . . . [S]he
> threatened to put me out and all kind of different
> shit. . . . if I don't shoot the dope, split the
> heroin with her, whatever the shit, different shit

> like that.   Not, you know, this was like a few days
> ago.   You just, just, she just nagged, you know.   It
> just I'm, it, I guess it's accumulation of things that
> just you know, of with her naggin' all the time.
> Really wanted me to do better and I just . . ."

Doc. No. 2-2 at p. 61.

In response to nagging from Smith while they were both in

bed, petitioner grabbed a hammer that was next to the bed and

struck Smith's head, causing a gash.   Petitioner told the

police:

> "[Before petitioner struck Smith with a hammer, Smith]
> had just got through talkin' shit to me. . . . Talkin'
> 'bout I need to, uh, we's supposed to be going to
> Denver to take her daughter's bedroom set.   I need to
> get my life together.   I end up lost too much.   It's
> time for me to get some . . . she said get some . . .
> just about daily.
>
> . . . .
>
> She talking about . . . she goes through these phases
> where she'll say something about you did this, you did
> this, or you did done this, you did this.   You stop,
> you get your life together, you done lost so much, and
> then the next thing you know, you know, she's . . .
> not really, you know . . . hard doing just the dope,
> and she's . . . you know, can't do and shut her damn
> mouth.   Then you know, but I ain't got nothing, and
> she . . . she set up there and be quiet a little
> while, and then . . . I guess she caught herself just
> . . . decided she'd want to she'd start talking shit.
> Then after a while I would just, before I'd just sit
> up and there and just try to go on and just listen to
> her and she'd go on and after a while she'd quit
> saying anything and it's so hard to explain how she
> just be naggin', talk shit and stop, talk shit and
> stop.   Come up with some other shit and . . . I don't
> know what I was gonna accomplish [by hitting her with
> the hammer] . . . . I was tired of her talking shit on
> me.   I was basically just probably ready to give up

and just go one over my auntie's house and leave
Monday."

Id. at pp. 75-76 & 78.

Smith jumped up and grabbed her gun after she was struck by
the hammer. The gun was a revolver with a cylinder. A trigger
had to be pulled with some force for the gun to fire. Smith and
petitioner struggled for control of the gun. As they did so,
the gun clicked several times but did not fire. Eventually, the
weapon fired once into Smith's chest while she was pinned to the
floor by petitioner. Petitioner told the police:

> "I throwed her, I threw her down . . . . I, I had, I
> think by this time I had got control of [the gun]. I
> got, reached it . . . . And I just had it like this up
> against her. I just, like I said, I, I, you know,
> I'll just kill you if you, I don't know what you
> trippin' on, why you doin' me like this and . . .
> doin' the stuff and I just clicked it and it, it just
> shot.
>
> . . . .
>
> I got the gun on her . . . Just touchin' her . . . I
> said, I think I, you know I'll kill you, you know.
> And then I, I even think I even told her that I love
> her.   I said why are you, you trippin' with me,
> talkin' about, belittlin' me and just, I just in few
> seconds or whatever it was I just said a bunch of
> bullshit."

Id. at pp. 15 & 83.

Believing that Smith was dead, petitioner attempted to take
an overdose of drugs. He awoke from a drug-induced seizure,
however, and called 911 (around 5:19 a.m.) reporting that "he

had shot his girlfriend." Petitioner remarked to the police that he expected to be in jail for the rest of his life.

### 2. Evidence which was intended to be redacted.

The recorded interview with the police contained comments indicating that petitioner had used drugs since at least the age of 16; that he had used pot, crack and powder cocaine, heroin, and ritalin; that he had sold "weed and crack"; that he had been in prison before; that he had stolen things to raise money; that he pinched drugs and money from people he supplied drugs to; that he once wanted to slap Smith upside the head; and that he once sold a gun for money and drugs. Petitioner contends that these comments and others like them were intended to be redacted but that the redactions were not made before the videotape and transcripts were communicated to the jury. His trial counsel made an objection after the videotape was played and asked for a curative instruction. But, the request for a curative instruction was later withdrawn and one was not given.

### 3. Petitioner's trial testimony

Petitioner testified during the second trial that he was enraged by Smith's complaints to him and that because of this anger he hit her with the hammer. He testified that Smith jumped up after being struck by the hammer and grabbed her gun. Petitioner testified that he jumped up too and wrestled Smith for control of the gun. During the scuffle the gun "clicked"

three or four times but did not fire.  Petitioner testified that
he told Smith during the struggle that he could kill her only in
an effort to get her attention.  According to petitioner's
testimony, he never meant to convey that he intended to kill
Smith.

When the gun did fire, Smith was on the floor and
petitioner was straddled over her on one knee with his hands on
the gun and her hands on his hands.  He did not claim that she
made him pull the trigger.

### 4.  Other evidence

There was evidence from a firearms expert that the weapon
may have misfired.  Smith was a petite 46-year-old woman.  She
was some years older than petitioner, and many inches shorter
and many pounds lighter than petitioner.  At the time of the
crime, petitioner was approximately 5 feet 8 inches and weighed
140 pounds.

### D.  Closing arguments

There was no reference in closing arguments to petitioner's
drug use or drug activity beyond the immediate time period
before Smith's death.  Nor was there any reference to petitioner
having a prison record.

## III.  PETITIONER'S ARGUMENTS FOR HABEAS RELIEF

Petitioner makes the following arguments for relief:  1)
that he was denied his constitutional right to effective

appellate counsel because appellate counsel did not raise the issue of the improperly redacted videotape and transcript of petitioner's police statement (or trial counsel's ineffectiveness vis-à-vis that issue) on direct appeal; 2) that petitioner was denied his right to a fair trial because of the admission of the improperly redacted videotape and transcript; 3) that petitioner's right to a fair trial was denied by prosecutorial misconduct, i.e., the purposeful introduction of the improperly redacted materials; 4) there was insufficient evidence to support petitioner's guilt of premeditated murder; and 5) cumulative error.

IV.   PETITIONER HAS NOT SHOWN THE PREJUDICE TO HIS DEFENSE NECESSARY TO PREVAIL UPON HIS INEFFECTIVE ASSISTANCE CLAIMS.

A successful claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining prejudice, the court must be convinced "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When a petitioner asserts that appellate counsel was ineffective by failing to raise on issue on appeal, the court examines the

merits of the omitted issue. U.S. v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995).

In this case, the effectiveness of petitioner's appellate counsel is challenged on the grounds that he failed to raise the issue of ineffective assistance of trial counsel and on the grounds that he failed to include the videotaped statement and accompanying transcript in the appellate record so that errors relating to the videotape, including trial counsel's effectiveness, could be determined on direct appeal. Doc. No. 1, p. 5. Petitioner contends that his trial counsel was ineffective because he failed to review the improperly redacted videotape prior to it being played to the jury, failed to make a timely objection, and failed to ask for an admonition to the jury. Id. Petitioner also asserts that his appellate counsel failed to file a reply brief or motion for reconsideration. Id. But, he has not elaborated upon this last point or demonstrated why the failure to file a reply brief or motion for reconsideration caused him prejudice.

In addressing petitioner's contentions, the court shall focus upon the issue of prejudice, that is, whether petitioner has demonstrated that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. This is an issue

which lies under the questions of trial counsel's and appellate counsel's effectiveness.

Petitioner contends that the evidence that petitioner had used drugs from an early age, that he had sold drugs, that he had been in prison, that he had used a variety of drugs, that he had stolen things, and that he had wanted to slap Smith upside the head, was so harmful to petitioner's credibility that, if the videotape had been properly redacted, there would have been a reasonable probability of a different verdict.

The Kansas Court of Appeals rejected this argument on the appeal after the remand of petitioner's 60-1507 motion. The court noted that the Kansas Supreme Court found that the evidence of premeditation was "overwhelming" and that this evidence would have been presented regardless of what should have been redacted from the videotape. Holmes v. State, 2013 WL 3791660 *9 (Kan.App. 2013). This evidence was that petitioner used a weapon which he believed was capable of murder; that there was insufficient provocation for killing Smith; that petitioner struck Smith in the head with a hammer and then shot Smith point blank after subduing Smith on the floor and gaining control of the gun; that petitioner said before he killed Smith that he "would" or "could" kill her; and that, after he shot her, he consumed drugs before calling 911, told 911 that "he

shot his girlfriend," and later told the police that he thought he would be going to jail for the rest of his life.

The Kansas Court of Appeals also stated that petitioner's testimony to the jury was not substantially contrary to the videotaped comments which petitioner insists should have been redacted. Id. at *10. The court noted that petitioner testified about his history of selling and using drugs; that he provided drugs to Smith; that he had sold his stuff to maintain their drug habits; and that she nagged him about getting back into the "money mode . . . and get back to start hustling." Id. In addition, petitioner's trial counsel discussed petitioner's extensive drug addiction in his opening statement. He referred to petitioner as a "dope fiend."

The court also notes that the segments of the videotape which were intended to be redacted were not mentioned during the closing arguments of the trial. Further, the court is not convinced that a jury would consider a history drug use, drug selling or prison time to be probative of truthfulness, unless the question concerned the ability to perceive events. Petitioner repeatedly claims in his arguments that this evidence was harmful to petitioner's credibility, but this is not logically the case. See e.g., State v. Robinson, 624 P.2d 964, 970-71 (Kan. 1981)(drug offenses per se are inadmissible for purpose of impairing credibility of a witness). Petitioner's

argument seems more directed to whether the excerpts which were intended to be redacted besmirched his character (i.e., made petitioner appear to be a "bad man") more than would have otherwise been the case. But, the court is not convinced that the extent of the prejudice was so great there is a reasonable probability that but for the mistakes of counsel there would have been a different outcome at trial or on appeal. It is also possible that the jury considered petitioner's willingness to describe negative aspects of his personal history as evidence that petitioner was being truthful with the police during his interview. See <u>Williams v. Trammell</u>, 782 F.3d 1184, 1203 (10th Cir. 2015).

In short, the court finds that petitioner has not demonstrated the prejudicial impact necessary to prevail upon the arguments he has asserted regarding his appellate and trial counsel's performance. The court further determines that the state court's decisions relevant to these arguments are not contrary to established Supreme Court law.

V.   PETITIONER HAS NOT SHOWN THAT THE ADMISSION OF THE VIDEOTAPE DENIED HIM A FUNDAMENTALLY FAIR TRIAL.

Petitioner's next argument is that his constitutional right to a fair trial was denied because of the admission of the improperly redacted videotape. The Due Process Clause of the Fourteenth Amendment is violated when "evidence is introduced

that is so unduly prejudicial that it renders the trial fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 825 (1991). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352-53 (1990). The Tenth Circuit "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002)(quoting Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998). The Tenth Circuit has also said in an analogous case that the issue is whether the erroneous admission of evidence "substantially and injuriously influenced the jury's verdict." Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995) cert. denied, 516 U.S. 1178 (1996).

After considering the trial transcript, the court believes the alleged erroneous admission of the videotape evidence did not deny petitioner a fundamentally fair trial or substantially and injuriously influence the jury's verdict. Our reasons are similar to those given for rejecting petitioner's ineffective assistance arguments. Further, although the fact situations vary from the facts in this case, the court finds some support for this holding in the following cases: Young v. Attorney

15

General for New Mexico, 534 Fed.Appx. 707, 710 (10th Cir. 2013)(evidence of gang affiliation did not create fundamental unfairness in murder trial); Burger v. Woods, 515 Fed.Appx. 507, 510 (6th Cir. 2013)(evidence of 7-year-old robbery in armed robbery trial did not violate due process); Holloman v. Gonzales, 249 Fed.Appx. 57, 62-63 (10th Cir. 2007)(evidence of violent behavior the day before alleged murder did not deny due process); Bugh v. Mitchell, 329 F.3d 496, 511-13 (6th Cir.) cert. denied, 540 U.S. 930 (2003)(evidence of similar uncharged acts of sexual molestation did not violate due process even if admission violated state law); Duvall v. Reynolds, 139 F.3d 768, 788 (10th Cir.) cert. denied, 525 U.S. 933 (1998)(prior acts testimony, even if admitted erroneously, was harmless); Hopkinson v. Shillinger, 866 F.2d 1185, 1198 (10th Cir. 1989) cert. denied, 497 U.S. 1010 (1990)(evidence of a prior assault and a marijuana charge, did not violate due process in a murder case).

VI. PETITIONER'S CLAIM OF PROSECUTORIAL MISCONDUCT FAILS BECAUSE PETITIONER HAS NOT SHOW SUFFICIENT PREJUDICE OR UNFAIRNESS.

Petitioner's next claim is that habeas relief is warranted on the basis of the prosecutor's alleged purposeful presentation of the improperly redacted videotape. Where prosecutorial misconduct does not implicate a specific constitutional right, the reversal of a state conviction upon habeas review depends on

whether the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006) cert. denied, 550 U.S. 912 (2007)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The analysis appears to be no different from the consideration of whether fundamental fairness was denied by the admission of the videotape or whether sufficient prejudice to alter the outcome was created by the admission of the videotape. Based upon the court's prior discussion, the court finds that petitioner's allegations of prosecutorial misconduct do not warrant habeas relief.

VII. THERE WAS SUFFICIENT EVIDENCE OF PREMEDITATION TO WITHSTAND PETITIONER'S HABEAS CHALLENGE.

The fourth argument petitioner has advanced for habeas relief asserts that there was insufficient evidence of premeditation and that petitioner was actually innocent. In his reply brief, petitioner states that his actual innocence claim is part and parcel of the sufficiency of the evidence challenge. Doc. No. 20 at p. 2. Therefore, the court shall only consider whether the evidence of premeditation was sufficient. Petitioner claims that the evidence regarding premeditation "was not overwhelming and the general facts over the fight, struggle, and misfiring of the gun were not in dispute." Doc. No. 1, p. 11.

In addressing a sufficiency of the evidence claim upon a habeas challenge, the court should view the evidence in a light most favorable to the State and grant habeas relief only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" Spears v. Mullin, 343 F.3d 1215, 1237-38 (10th Cir. 2003) cert. denied, 541 U.S. 909 (2004)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra. As the Tenth Circuit has stated:

> In assessing intent on sufficiency of the evidence review, this court recognizes,
>> "[f]irst, a jury is permitted to draw inferences of subjective intent from a defendant's objective acts. Thus, even when a defendant ... denies having the requisite intent, a jury may disbelieve the defendant if [the defendant's] words and acts in the light of all the circumstances make [the defendant's] explanation seem improbable. Second, a jury is permitted to find that a defendant intends those consequences which he announces a desire to accomplish."

Spears, 343 F.3d at 1239 (quoting Wingfield v. Massie, 122 F.3d 1239, 1333 (10th Cir. 1997)).

In this matter, as discussed previously, the Kansas Supreme Court reviewed the factors that a jury could have considered to support a finding of premeditation. In light of this evidence

and respecting the jury's right to assess credibility in considering the conflicts among petitioner's statements, the court believes that a rational trier of fact could have found proof of premeditation and the other elements necessary for petitioner's convictions.

VIII. PETITIONER'S CUMULATIVE ERROR CLAIM DOES NOT WARRANT HABEAS RELIEF.

Finally, petitioner has asserted the combination of errors during his second trial requires habeas relief. His analysis, however, is simply a repeat of his claims of prejudice from the admission of the videotape. The court has already discussed this issue. The court has considered the materials in the videotape, the absence of an admonition, the evidence the jury would have heard with the intended redactions and the evidence the jury heard because redactions were not made. For the reasons previously stated, the court does not find that any errors leading to the admission of the videotape probably affected the outcome of the trial or caused the trial to be fundamentally unfair.

IX. CONCLUSION

For the above-stated reasons, the petition for writ of habeas corpus shall be denied.

In addition the court shall deny the issuance of a certificate of appealability. Rule 11 of the Rules Governing

Section 2254 Cases in the United States District Courts, 28 U.S.C., instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000)(citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the court's rulings resulting in the dismissal of this action are debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve

20

the issues in this case differently.   Accordingly, a certificate
of appealability shall be denied.

**IT IS SO ORDERED.**

Dated this 10th day of September, 2015, at Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge